# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JEFF FERRINGTON,

        **Plaintiff,**

      v.                           **Case No. 20-CV-357**

ANDREW M. SAUL,
**Commissioner of the Social Security Administration,**

        **Defendant.**

# DECISION AND ORDER

## 1. Introduction

Plaintiff Jeffrey Ferrington alleges that he has been disabled since March 7, 2016. (Tr. 133.) He seeks disability insurance benefits. After his application was denied initially (Tr. 232-41) and upon reconsideration (Tr. 243-54), a hearing was held before an administrative law judge (ALJ) on May 6, 2019 (Tr. 152). On May 28, 2019, the ALJ issued a written decision concluding that Ferrington was not disabled. (Tr. 145.) After the Appeals Council denied Ferrington's request for review on January 11, 2020 (Tr. 1-4), Ferrington filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Ferrington "did not engage in substantial gainful activity during the period from his alleged onset date of March 7, 2016 through his date last insured of June 30, 2017[.]" (Tr. 135.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Ferrington has the following severe impairments: "diabetes mellitus; cardiomyopathy; chronic left bundle branch block; impingement syndrome of the left shoulder; and lumbar disk bulge[.]" (Tr. 135.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the

2

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Ferrington "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" (Tr. 137.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Ferrington has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except no concentrated exposure to hazards, defined as work at heights; occasional overhead reaching with the non-dominant left upper extremity; and occasional reaching behind the back with the non-dominant left upper extremity." (Tr. 138.)

After determining the claimant's RFC the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Ferrington "is not able to perform past relevant work as actually or generally performed." (Tr. 143.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that [Ferrington] could have performed[.]" (Tr. 143.) In reaching that conclusion the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Ferrington's RFC, age, education, and work experience could perform the requirements of bench assembler, electronics worker, and routing clerk. (Tr. 144.) Finding Ferrington could perform work in the national economy, the ALJ concluded he was not disabled. (Tr. 144.)

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

Ferrington argues that the ALJ erred by (1) improperly limiting the weight of medical opinions; (2) improperly assessing Ferrington's credibility when analyzing his subjective symptoms; and (3) improperly concluding that there were a significant number of jobs in the region that he could perform.

### 4.1 Opinion Evidence

Ferrington challenges the "little weight" the ALJ afforded the opinions of primary care physician Sharon Shepich, MD. (ECF No. 13 at 11-21.) The ALJ found that "her opinions do not address the period at issue, and are not supported by the objective medical findings." (Tr. 142.)

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (unpublished) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give

a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)).

While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

In a medical opinion dated February 1, 2017, Dr. Shepich, Ferrington's treating primary care provider, opined that Ferrington has "chronic low back pain, lumbar spondylosis, ischemic cardiomyopathy, depression, left shoulder arthritis, uncontrolled Type I diabetes[.]" (Tr. 877.) She opined that Ferrington would be "off task" more than 30 percent of a workday due to his limitations, and that he would likely be absent from work five or more days per month as a result of his physical or mental impairments and/or need for ongoing treatment and care. (Tr. 880.) In a medical opinion dated May 25, 2017, Dr. Shepich opined that Ferrington would need to lie down at unpredictable intervals once or twice during a work shift for 15-30 minutes each time. (Tr. 1022.) She opined that Ferrington could use his right hand and fingers 100 percent of an eight-hour

workday but could only use his left hand and fingers 33 percent of a workday. (Tr. 1026.)

She opined that he could reach with his right arm 33 percent of the time but could not

reach with his left arm at all. (Tr. 1026.)

> The ALJ wrote:
>
> I have given Dr. Shepich's opinions controlling or even great weight, as the May 2017 opinion indicated that the limitations were applied as early as December 2014, which is over a year before before [sic] the alleged onset date. She is only a primary care physician, and her opinions do not address the period at issue, and are not supported by the objective medical findings.

(Tr. 142.) The ALJ's opinion appears to omit a crucial "not." To interpret the paragraph

otherwise would mean the ALJ gave the opinions either controlling or great weight

followed immediately by four reasons for not giving them controlling or great weight.

Ferrington proceeds as if the ALJ wrote that she had *not* given Dr. Shaperich's opinions

controlling or great weight, and the Commissioner notes in a footnote his presumption

that this typographical error occurred. (ECF Nos. 13 at 16, 18 at 7.) The court will likewise

presume that the ALJ intended to write that she has *not* given Dr. Shaperich's opinions

controlling or great weight.

Ferrington argues that the ALJ erred by not giving Dr. Shepich's opinions any

weight. (ECF No. 13 at 16.) He argues that, when Dr. Shepich opined that the limitations

applied as early as December 2014, she did not mean to say that the limitations applied

only to Ferrington's condition in December 2014. (ECF No. 13 at 16.) Ferrington argues

that the ALJ should have read Shepich's opinion as stating that the limitations applied

from December 2014 through the date of her second opinion, in May 2017. (ECF No. 13 at 16.)

Ferrington also argues that Dr. Shepich's opinions were not contrary to objective medical evidence because her findings were corroborated by evidence from Dr. Kris Ferguson at Advanced Pain Management, Dr. Wayne Brearley at the state agency, and Dr. Joel Furda's medical records. (ECF No. 13 at 16-19.) He argues that the ALJ did not adequately address whether Dr. Shepich's opinion was consistent with the record as a whole, and as a result failed to adequately address the regulatory factors. (ECF No. 13 at 20.)

The Commissioner argues that it was appropriate for the ALJ to discount Dr. Shepich's opinions because the ALJ noted numerous inconsistencies in her opinions, and the ALJ was not required to summarize Dr. Shepich's medical evidence. (ECF No. 18 at 8.) The Commissioner states that the treatment records Dr. Shepich cites do not contain findings to support her opinions. (ECF No. 18 at 12-13.) The Commissioner also argues that that the ALJ found a pattern of inconsistencies in Ferrington's treatment: he would present with significant symptoms, receive appropriate and effective treatments, and then stop seeking treatment. (ECF No. 18 at 8.) The ALJ reasonably inferred that this meant that the treatment was successful and Ferrington's symptoms resolved. (ECF No. 18 at 8.)

Ferrington replies that the ALJ "cannot assume improvement because he stopped seeking treatment." (ECF No. 21 at 8.)

"Courts have repeatedly stressed that an ALJ 'must not draw any inferences about a claimant's condition from this failure [to pursue treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Eula M. v. Berryhill*, No. 17 C 6669, 2019 U.S. Dist. LEXIS 84685, *29 (N.D. Ill. May 20, 2019) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); *see* SSR 16-3p, 2016 SSR LEXIS 4, *23, 2017 WL 5180304, at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.").

A medical note reflects that Ferrington reported to a medical provider that he did not seek physical therapy due to its expense. (Tr. 1313.) Without exploring other explanations for his failure to seek further treatment, the ALJ committed an error of law by inferring from the fact that Ferrington did not seek further treatment that his symptoms resolved.

Ferrington also argues that the ALJ erred in evaluating Dr. Shepich's opinions by "playing doctor" in interpreting the MRI reports of his lumbar disk bulge. (ECF No. 21 at

10.) He argues that the ALJ was not able to determine the impact of a moderate narrowing of the existing neural foramina on Ferrington's work abilities. (ECF No. 21 at 10.)

The ALJ stated:

an MRI of [Ferrington]'s lumbar spine conducted in February 2015, prior to the alleged onset date, was within normal limits except where there was a left-sided mild disk bulge at LS-SI without spinal stenosis causing moderate narrowing of the exiting neural formina [sic] on the left. A subsequent MRI conducted in March 2018, after the date last insured, once again demonstrated only minimal bulging at L4-L5 and mild to moderate bulging at LS-SI more on the left than on the right. In addition, there was no spinal stenosis seen at any level, and the only narrowed neural foramina was moderate narrowing of the exiting neural formina [sic] on the left at LS-SI. While [Ferrington] has received epidural steroid injections and a bilateral LS-SI facet injection, he has not undergone back surgery or physical therapy treatment[.]

(Tr. 140-41) (internal citations omitted). The medical notes the ALJ relied on do not contain plain language explanations from which the ALJ could draw the conclusion that the MRIs were "within normal limits." They reflect that one of the MRIs was not completed because Ferrington was not able to lie on the table for the duration of the exam. (Tr. 1274-79.) The medical notes and MRI results that the ALJ cites do not explain how the findings would impact Ferrington's abilities. By interpreting the medical notes, the ALJ did not support with substantial evidence that part of her opinion that afforded "little weight" to Dr. Shepich's opinions. As a result, it will be necessary for the ALJ to reassess Dr. Shepich's opinion on remand.

**4.2 Subjective Statements/Credibility Assessment**

Ferrington argues that the ALJ did not consider the factors in 16-3p when she evaluated his subjective statements regarding pain and fatigue. (ECF No. 13 at 24.) Specifically, Ferrington argues that the ALJ failed to consider that he underwent shoulder surgery, facet injections, and radio frequency ablation. (ECF No. 13 at 25.) He argues that these are invasive procedures which suggest he was attempting to mitigate significant symptoms. (ECF No. 13 at 25-26.) He argues that the ALJ erred by not considering his daily activities, fatigue, and the other regulatory factors under the second step of SSR 16-3p. (ECF No. 13 at 26.)

The Commissioner responds that Ferrington failed to identify any medical records that the ALJ did not address. (ECF No. 18 at 17.) He argues that, although evidence that Ferrington underwent those interventions may generally indicate a serious problem, "if the treatment effectively resolves or significantly improves the condition, then [his] impairments are not disabling." (ECF No. 18 at 19.) He argues that the ALJ properly considered the interventions and appropriately determined that they effectively treated Ferrington's symptoms, meeting the requirements of 16-3p. (ECF No. 18 at 20.)

"[A]n ALJ need only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (quoting *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). "[T]he ALJ need not provide a written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363,

371 (7th Cir. 2004). Only if the evidence "would support strongly a claim of disability" must the ALJ explain "why he does not credit [the] evidence" "or why he concludes that such evidence is outweighed by other evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). The court finds that the ALJ did consider Ferrington's shoulder surgery, facet injections, and radio frequency ablation. (Tr. 140.) Ferrington has not shown that the evidence the ALJ failed to discuss "would support strongly a claim of disability." Therefore, the ALJ did not error in not discussing the evidence.

### 4.3 Step Five Regional Number of Jobs

> An individual is disabled only if he or she "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . in significant numbers either in the region where such individual lives or in several regions of the country."

*Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009) (quoting 42 U.S.C. § 423(d)(2)(A)). Ferrington argues that there are not a significant number of jobs that he could perform in the region where he lives. "[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. §§ 404.1566(a), 416.966. Ferrington extrapolates the number of jobs in Wisconsin from the number of jobs in the national economy based on a percentage of the population, as the court did in *James A. v. Saul*, No. 1:19-CV-180-JVB, 2020 U.S. Dist. LEXIS 121297 (N.D. Ind. July 10, 2020). He determines that in Wisconsin there would be only 499 bench assembler jobs, 565 electronic worker jobs, and 369 routing clerk jobs—the

three jobs that the VE said he could perform. (ECF No. 13 at 28-29.) Ferrington argues

that at least 1,000 jobs in the regional economy is necessary to constitute a significant

number, and none of these jobs exist in that quantity in Wisconsin. (ECF No. 13 at 27)

(citing *Liskowitz, supra*, 559 F.3d at 743).

The Commissioner responds that, even if the extrapolation argument were

persuasive, Ferrington would still have 1,431 jobs in Wisconsin available to him. (ECF

No. 18 at 23.) The Commissioner argues that Ferrington does not explain why the court

should consider the number of available jobs separately. (ECF No. 18 at 23.)

*Liskowitz* does not stand for the proposition, as Ferrington suggests, that any

number of jobs less than 1,000 in the regional economy, whether counted separately or

added together, is an insignificant number of jobs. Although the court in *Liskowitz* stated

that "it appears to be well-established that 1,000 jobs is a significant number[,]" 559 F.3d

at 743, in no way did it suggest that 1,000 jobs was a threshold number. In fact, as the

Commissioner points out, the court noted that as few as 174 jobs has been held to be

significant. *Id.* Indeed, Liskowitz did not even dispute that the VE identified a significant

number of jobs. Rather, her arguments were that the VE was not able to testify as to the

reliability of the data she used to reach her conclusions, and that she was unable to

identify the number of part-time jobs that were included in her data set. *Id.*

In short, Ferrington has presented no authority suggesting that the number of

available jobs of the types identified by the VE were insignificant, either nationally or,

using Ferrington's extrapolation approach, regionally. The ALJ supported with substantial evidence her conclusion that there were jobs that exist in significant numbers in the national economy that Ferrington could perform. Therefore, the extrapolation argument made by Ferrington fails to establish that either the ALJ's decision was wrong or that remand is appropriate regarding the number of available jobs.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of February, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge